[Cite as *State v. Clark*, 2024-Ohio-3240.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

CASE NO. 9-23-74

v.

AARON ALAN CLARK,

O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 23-CR-288

Judgment Affirmed

Date of Decision:  August 26, 2024

APPEARANCES:

    *April F. Campbell* for Appellant

    *Allison M. Kesler* for Appellee

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Aaron Clark ("Clark") brings this appeal from the judgment of the Court of Common Pleas of Marion County finding him guilty of assault. Clark claims on appeal that the verdict was not supported by sufficient evidence and was against the manifest weight of the evidence. For the reasons set forth below, the judgment is affirmed.

{¶2} This case arises from a 911 call received on July 15, 2023, reporting a domestic disturbance. Marion officers responded to the call and after speaking with the victim, determined that they had probable cause to arrest Clark. Once the officers informed Clark he was going to be arrested, he responded with anger. When the officers attempted to place Clark in handcuffs, Clark began wrestling with them and screaming expletives at the officers. Eventually Officer Bryce Lowry ("Lowry") used his taser on Clark. Clark became angrier and attempted to knock the taser away from Lowry. Lowry then used the taser again and Clark fell to the ground. While on the ground, Lowry began kicking his legs towards Lowry and eventually struck Lowry's chest with his foot.

{¶3} On July 19, 2023, the Marion County Grand Jury indicted Clark on one count of domestic violence in violation of R.C. 2919.25(A), (D)(4), a felony of the third degree and one count of assault in violation of R.C. 2903.13(A), (C)(5), a

felony of the fourth degree. A jury trial was held on October 5 and 6, 2023. At the trial, the State presented the following relevant testimony.

**{¶4}** Lowry testified that he is employed as a police officer with the city of Marion. On July 15, 2023, Lowry responded to a call regarding a potential domestic violence. Lowry spoke with the alleged victim and helped her to remove her belongings from the home and into a vehicle to allow her to leave the home. Lowry then went to another location to speak with the alleged victim at her request. Based upon what the alleged victim told Lowry, he determined there was probable cause to arrest Clark and returned to the residence.

**{¶5}** Lowry then spoke with Clark on the front porch of the home and told him of the allegations. Lowry informed Clark he was going to be placed under arrest. Clark requested that a supervisor come to the home. Lowry contacted his supervisor who indicated he would not be coming and instructed Lowry to go ahead and arrest Clark. Clark then indicated he wished to make a phone call. Lowry told Clark that he could make the call once he was handcuffed. Clark argued about that and eventually made the call, putting it on the speaker phone setting so that he could talk without holding the phone. Lowry instructed Clark to stand up, but Clark instead picked up the phone and attempted to go back inside the home. Lowry then grabbed Clark's wrist to stop him and Clark turned to face Lowry.

**{¶6}** Clark started wrestling with Lowry and Officer Walter Childers ("Childers"), who had come to assist Lowry. Eventually, the three of them fell off

the side of the porch and fell to the ground. While on the ground, Clark was still not complying. Clark was screaming at Lowry and Childers and refused to put his hands behind his back. Clark was lying on his back and Lowry pulled out his taser and told Clark to stop or Lowry would use his taser. Clark then flipped over onto his hands. Lowry put the taser against Clark's back and told him to put his hands behind his back. Clark began to stand up instead of lying back down as instructed, so Lowry activated the taser. Clark then went down to the ground and turned onto his back again and screamed at Lowry and Childers. Clark attempted to smack the taser from Lowry's hands and began kicking his legs. Lowry testified that at one point, Clark kicked him in the chest. Once he was kicked, Lowry used the taser on Clark again. Lowry testified that he believed that Clark was directing his kicks towards Lowry. Lowry indicated that he did not receive any injury. Lowry and Childers were able to eventually place Clark in handcuffs and arrest him. Lowry identified Exhibit 1 as the body cam footage of the incident in question. The footage was shown to the jury. On cross-examination Lowry testified that when a taser was used on him during his training, Lowry's muscles tensed up while the electrical charge was active, making him lose the use of his body. Once the electricity was no longer being deployed, the rigidity ended.

{¶7} No other witness testified regarding the arrest of Clark that resulted in the assault charge. The jury returned a verdict of not guilty as to the domestic violence, but found Clark guilty of committing assault against Lowry. The trial

court held a sentencing hearing on October 27, 2023. The trial court sentenced Clark to 18 months in prison. Clark appealed from this judgment and raised the following assignments of error on appeal.

## First Assignment of Error

**The State's evidence that Clark committed assault against Officer Lowry was legally insufficient as a matter of law.**

## Second Assignment of Error

**The evidence also weighed manifestly against convicting Clark of assaulting Officer Lowry.**

### *Sufficiency of the Evidence*

{¶8} In the first assignment of error, Clark alleges that his conviction was not supported by sufficient evidence.

> A sufficiency analysis "'determine[s] whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, . . . (1997), quoting Black's Law Dictionary 1433 (6th Ed.1990). If the state fails to present sufficient evidence on every element of an offense, then convicting a defendant for that offense violates the defendant's right to due process of law. *Id*. at 386-387, . . . see also *Jackson v. Virginia*, 443 U.S. 307, 316, . . . (1979).

*State v. Messenger,* 2022-Ohio-4562, ¶ 13. The issue of whether the evidence presented at trial is legally sufficient to support a verdict is a matter of law and questions the adequacy of the evidence. *State v. Hulbert*, 2021-Ohio-2298, ¶ 5 (3d Dist.). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted

at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991) superseded by constitutional amendment on other grounds. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.).

{¶9} Clark was charged with violating R.C. 2903.13(A), (C)(5). To obtain a conviction on this charge, the State was required to prove that Clark 1) knowingly 2) caused or attempted to cause 3) physical harm and 4) the victim was a peace officer in the performance of the person's official duties. Clark argues that he was not knowingly attempted to cause physical harm because he was under the effects of the taser when he was kicking and had no control of his body at that time.

{¶10} Lowry testified that he was working as a police officer at the time of the incident. Lowry also testified that Clark was directing kicks in his direction as he was trying to avoid being arrested. According to Lowry, one of the kicks connected with his chest, but he was not injured. Exhibit 1 was footage of the incident which shows Clark kicking in Lowry's direction and making contact with Lowry's chest. Viewing this evidence in a light most favorable to the state, a

reasonable juror could conclude that Clark was deliberately attempting to kick Lowry and attempting to cause physical harm to Lowry. Thus, the evidence was sufficient to support the conviction for assault. The first assignment of error is overruled.

*Manifest Weight of the Evidence*

**{¶11}** In his second assignment of error, Clark claims that his conviction is against the manifest weight of the evidence.

> When reviewing a judgment to determine if it is against the manifest weight of the evidence, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Mendoza*, 137 Ohio App.3d 336, 738 N.E.2d 822 (2000). See, also, *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. Thompkins at 387, 678 N.E.2d 541. Although the appellate court acts as a "thirteenth juror," due deference to the findings made by the fact-finder must still be given. *State v. Moorer*, 3d Dist. 13–12–22, 2013-Ohio-650, 2013 WL 684735, ¶ 29.

*State v. Hulbert*, 2021-Ohio-2298, ¶ 23 (3d Dist.).

**{¶12}** Clark claims that the conviction was against the manifest weight of the evidence because at the time he began kicking, he had just been subjected to the taser. Clark argues that this shows that he lacked control of his body at that time, so did not act knowingly. As discussed above, the testimony of Lowry was that in his opinion, Clark was directing the kicks at him to try and avoid being arrested.

Lowry's testimony on cross-examination was that when the taser was used on him during his training, Lowry's muscles tensed up and became rigid while the electricity was being deployed. When the electricity ceased, so did the rigidity. No testimony was presented by any witness that Clark lost control of his legs when he was making the kicking motion or that he did not deliberately attempt to kick Lowry. A review of the body cam footage appears to show that Clark's kicking motions occurred at a time when the taser was not deploying electricity. The video footage does not appear to show random leg movements, but rather kicks made in the direction of Lowry. The jury heard the testimony and observed the footage of the incident. The jury determined that based upon the evidence before it, Clark acted deliberately in his actions. A review of the record before this Court does not show that the jury clearly lost its way, that the evidence weighs heavily against conviction, or that a manifest miscarriage of justice occurred. Thus, the conviction is not against the manifest weight of the evidence and the second assignment of error is overruled.

{¶13} Having found no prejudicial errors in the particulars assigned and argued, the judgment of the Court of Common Pleas of Marion County is affirmed.

***Judgment Affirmed***

**WALDICK and MILLER, J.J., concur.**

**/hls**